c

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

| | |
|---|---|
| GEORGE A. PRESTON, Plaintiff | CIVIL ACTION NO. 1:16-CV-00562-P |
| VERSUS | JUDGE SUMMERHAYS |
| BOBBY HICKS, *ET AL.*, Defendants | MAGISTRATE JUDGE PEREZ-MONTES |

### REPORT AND RECOMMENDATION

Before the Court is a Motion for Summary Judgment (Doc. 47) filed by Defendant Bobby Hicks ("Hicks"). Plaintiff George A. Preston ("Preston") filed an untimely opposition. (Doc. 51). Genuine issues of material fact remain as to whether Hicks is entitled to qualified immunity and as to whether Hicks's use of force – a straight-arm bar takedown and force after Preston was on the ground was excessive. Thus, Hicks's Motion for Summary Judgment (Doc. 47) should be DENIED.

I. **Background**

Preston, proceeding *in forma pauperis*, filed a civil rights Complaint under 42 U.S.C. § 1983. (Doc. 1). Preston is an inmate in the custody of the Louisiana Department of Public Safety and Corrections ("DOC"), incarcerated at the Raymond Laborde Correctional Center ("RLCC") (formerly Avoyelles Correctional Center ("ACC")) in Cottonport, Louisiana. Preston complained of excessive force by five prison officials. (Doc. 1).

The undersigned recommended dismissal of Preston's Complaint pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915(A). (Doc. 9). The District Judge agreed. (Doc. 12).

Preston appealed to the United States Court of Appeals for the Fifth Circuit. Preston v. Hicks, 721 Fed.Appx. 342 (5th Cir. 2018). The Fifth Circuit affirmed in part, reversed in part, and remanded for further proceedings. Id.

The Fifth Circuit summarized the allegations as follows:

> [Preston] filed a civil rights complaint against Lieutenant Bobby Hicks and four other state correctional officers under 42 U.S.C. § 1983, alleging use of excessive force in violation of the Eighth Amendment. Preston alleged the following in his complaint. Sergeant Ford, with Preston nearby, opened the door to the cell of another inmate, Jeremy Lenor. Preston ran into the cell and started "joking around" with Lenor. Ford shouted for help from Lieutenant Bowie, Lieutenant Hicks, Sergeant Dauzat, and Sergeant Augustine. Those other officers soon entered the cell. Lieutenant Hicks then elbowed Preston several times in the face. Several of the officers pulled Preston from the cell and two of them "slammed" him to the floor. On the floor, Sergeant Augustine kept Preston's left arm "strained" behind him while Lieutenant Hicks allegedly pulled and twisted Preston's right arm. Preston then screamed that Hicks was hurting his arm and was going to break it.
>
> Preston alleges that Hicks relaxed the twisting of his arm only when a bone began protruding from his shoulder area, causing a shoulder separation. Preston filed an administrative complaint, which was denied. The denial noted that he had been evaluated by medical staff who reported that his "right shoulder did not appear to be out of place." A doctor ordered an x-ray, which allegedly showed no fracture or dislocation.
>
> In a disciplinary report Preston attached to the complaint, Hicks reported that Preston ignored an order not to enter the other cell and had attempted to hit Lenor. Preston's evidence included affidavits from two other inmates who both claimed that Preston did not resist the officers and that Hicks appeared to be twisting Preston's arm as he screamed.

Preston, 721 Fed.Appx. at 343–44. The Fifth Circuit stated that Preston's allegations were sufficient to state an excessive force claim against Hicks, but that Preston failed to state a claim against the guards who allegedly held Preston to the floor while Hicks

2

pulled and twisted Preston's arm.  Id.  Thus, the sole remaining claim before the Court is Preston's excessive force claim against Hicks.[1]

Hicks answered, asserting various affirmative defenses. (Doc. 28). Hicks now moves for Summary Judgment (Doc. 47), seeking dismissal of Preston's action. (Doc. 47). Hicks asserts there is no genuine issue of material fact that Hicks is entitled to qualified immunity and, alternatively, that Hicks's use of force was applied in a good faith effort to restore and maintain order. (Doc. 47, p. 1). In addition to his Statement of Uncontested Material Facts, Hicks attaches in support:  (1) the affidavit of Craig Laborde, with attachments; and (2) the affidavit of Hicks, with an attachment. (Docs. 47-1, 47-2, 47-3).

Preston opposes and attaches in support:  (1) a Statement of Disputed Factual Issues; (2) his own Declaration; (3) the Declaration of Ashton Campbell; (4) the Declaration of Jeffery Jacobs; (5) the Declaration of Carroll Celestine; (6) photographs of Preston's injury; and (7) Preston's medical record pertaining to his right shoulder. (Docs. 51-1, 51-2).[2]  Hicks responds that Preston's opposition is untimely and insufficient to raise a genuine issue of material fact. (Doc. 52).

---

[1] Although it not clearly stated in Preston's Complaint (Doc. 1), subsequent dismissal (Docs. 9, 12), or the Fifth Circuit's reversal and remand as to Preston's claims against Hicks (Doc. 22), it appears that the sole remaining claim is Preston's Eighth Amendment claim for excessive force against Hicks in his individual capacity.

[2] Declarations and verified pleadings of a *pro se* prisoner that are dated and made on penalty of perjury constitute adequate summary judgment evidence. Grogan v. Kumar, 873 F.3d 273, 279 (5th Cir. 2017).  Here, Preston submits four declarations made on penalty of perjury. (Docs. 51-2, pp. 1-9).

## II. Law and Analysis

### A. Standards governing the Motion for Summary Judgment.

Under Rule 56 of the Federal Rules of Civil Procedure, a court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Paragraph (e) of Rule 56 also provides the following:

> If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may:
> (1) give an opportunity to properly support or address the fact;
> (2) consider the fact undisputed for purposes of the motion;
> (3) grant summary judgment if the motion and supporting materials--including the facts considered undisputed--show that the movant is entitled to it; or
> (4) issue any other appropriate order.[3]

"A genuine dispute of material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" See Hefren v. McDermott, Inc., 820 F.3d 767, 771 (5th Cir. 2016) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). In deciding a motion for summary judgment, a court must construe all facts and draw all inferences in the light most favorable to the non-movant. See Dillon v. Rogers, 596 F.3d 260, 266 (5th Cir. 2010). However, a mere scintilla of evidence is insufficient to defeat a motion for summary judgment. See Stewart v. Murphy, 174 F.3d 530, 533 (5th Cir. 1999).

---

[3] Local Rule 56.2W (formerly 2.10W) also provides that all material facts set forth in a statement of undisputed facts submitted by the moving party will be deemed admitted unless the opposing party controverts those facts by filing a short and concise statement of material facts as to which that party contends there exists a genuine issue to be tried.

4

Additionally, where a defendant asserts qualified immunity at the summary judgment stage, "the burden shifts to the Plaintiff to raise facts that dispute the defendant's assertion of qualified immunity." Estate of Pollard v. Hood Cnty., Tex, 579 Fed.Appx. 260, 264 (5th Cir. 2014) (per curiam). The court must still view all facts and make all reasonable inferences in light most favorable to the plaintiff. Id. But a "plaintiff must produce evidence that presents a genuine issue of material fact that (1) the defendants' conduct amounts to a violation of the plaintiff's constitutional right; and (2) the defendants' actions were 'objectively unreasonable in light of clearly established law at the time of the conduct in question.'" Id. (quoting Cantrell v. City of Murphy, 666 F.3d 911, 922 (5th Cir. 2012). cert. denied, 133 S.Ct. 119 (2012)). If the plaintiff fails to produce such evidence, the motion for summary judgment should be granted. Estate of Pollard, 579 Fed.Appx. at 264.

### B.   Standards governing qualified immunity.

Qualified immunity shields government officials performing discretionary functions against civil damages liability, so long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated. Gobert v. Caldwell, 463 F.3d 339, 345 (5th Cir. 2006) (citing Anderson v. Creighton, 483 U.S. 635, 638 (1987)). In determining whether an official enjoys qualified immunity, the Court must determine (1) whether the plaintiff has demonstrated a violation of a clearly established federal constitutional or statutory right, and (2) whether the official's actions violated that right to the extent that an objectively reasonable person would have known. Id. (citing Hope v. Pelzer, 536 U.S. 730 (2002)).

5

### C. Standards governing excessive force.

"[T]he settled rule [is] that 'the unnecessary and wanton infliction of pain . . . constitutes cruel and unusual punishment forbidden by the Eighth Amendment.'" Hudson v. McMillian, 503 U.S. 1, 5 (1992) (quoting Whitley v. Albers, 475 U.S. 312, 319 (1986)). "In evaluating excessive force claims under the Eighth Amendment, the 'core judicial inquiry' is 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" Cowart v. Erwin, 837 F.3d 444, 452 (5th Cir. 2016) (quoting Hudson, 503 U.S. at 6-7). This standard focuses on "the detention facility official's subjective intent to punish." Id. (quoting Valencia v. Wiggins, 981 F.2d 1440, 1449 (5th Cir. 1993)).

The Fifth Circuit utilizes the Hudson factors to establish whether the use of force was constitutionally permissible. Id. at 452-53. These factors are: (1) "the extent of injury suffered by an inmate;" (2) "the need for application of force"; (3) "the relationship between" the need for force and the amount of force used; (4) "the threat 'reasonably perceived by the responsible officials"; and (5) "any efforts made to temper the severity of a forceful response". Hudson, 503 U.S. at 7 (quoting Whitley, 475 U.S. at 321). However, once a prisoner has been subdued, using gratuitous force is unreasonable. Cowart, 837 F.2d at 454.

### D. The Court exercises its discretion in considering Preston's untimely opposition.

Hicks asks the Court to deem unopposed their summary judgment motion because Preston's opposition was untimely. Doc. 52). After suspension of the original dispositive motion deadline (Docs. 23, 39), the Court reset the dispositive motion

6

deadline to March 1, 2019. (Doc. 45). Hicks filed his summary judgment motion on the last day. (Doc. 47). The Notice of Motion Setting (Doc. 48), dated March 4, 2019, provided Preston's response was due within 30 calendar days of the date of notice. (Doc. 47). Thus, Preston's response was due on April 3, 2019. (Doc. 47). The Notice also included mailing instructions for *pro se* prisoners without electronic-filing capability. (Doc. 52).

Although Preston is proceeding *pro se*, "the notice afforded by the Rules of Civil Procedure and the local rules" is considered "sufficient" to advise a *pro se* party of his burden in opposing a summary judgment motion. Martin v. Harrison County Jail, 975 F.2d 192, 193 (5th Cir. 1992). However, district courts have broad discretion to consider untimely oppositions to motions for summary judgment. Nelson v. Star Enter., 220 F.3d 587 (5th Cir. 2000) (citing Hetzel v. Bethlehem Steel Corp., 50 F.3d 360, 367 (5th Cir. 1995); Lowndes v. Global Marine Drilling Co., 909 F.2d 818 (5th Cir. 1990)); see Fed. R. Civ. P. 6(b) (granting broad discretion to expand filing deadlines for good cause).

On April 3, 2019,[4] Preston addressed his opposition deadline, stating he sent documents for legal copies on March 26, 2019 and had yet to receive them, or a response, from "legal programs." (Doc. 50). Preston informed the Court of his inability to meet the deadline and asked for assistance. Id. Preston's opposition (Doc. 51) was filed on June 18, 2019, over two months late. Attached to Preston's untimely opposition memorandum was a letter dated April 16, 2019 (Doc. 51-2) again stating

---

[4] Preston's letter was dated April 2, 2019 and was mailed April 3, 2019, to the Court's physical address. (Docs. 50, 50-2).

issues in meeting his opposition deadline. Preston asserts he received copies from "legal programs" on April 12, 2019 but was placed in administrative segregation. (Doc. 51-2). Preston asserts he was unable to obtain his legal work which caused a delay in his filing. Id.

Given Preston's assertions, and in an abundance of caution and fairness, the Court will consider Preston's untimely opposition to summary judgment.

### D.     Genuine issues of material fact preclude summary judgment in favor of Hicks.

Hicks asserts there is no genuine issue of material fact that he is entitled to qualified immunity. (Doc. 47-4, p. 1). Hicks argues his conduct was not objectively unreasonable and did not violate any clearly established statutory or constitutional rights of Preston. (Doc. 47-4, p. 6).

The following facts are undisputed:

1. Preston is an offender sentenced to the custody of DOC and incarcerated at RLCC since October 20, 2008. (Docs. 47-3, p. 1; Doc. 51, p. 1).

2. On August 2, 2015, Preston was assigned to cell number 9 on the D1 tier of the Crawdad cell block. Id.

3. Offenders Campbell and Lenor were assigned to cell number 3 on the D1 tier of the Crawdad cell block. Id.

4. Under RLCC policies, no more than three offenders are allowed out of their cells at any given time – two are allowed up to 15 minutes to shower and one is allowed up to 15 minutes to use the phone. (Doc. 47-3, p. 1; Doc. 51, pp. 1-8).

5. On the evening of August 2, 2015, Offenders Preston and Campbell were let out of their respective cells. (Doc. 47-3, p. 1; Doc. 51, pp. 1-2).[5]

---

[5] Preston disputes Hicks's assertion that Preston was using the phone and that Campbell was showering. (Doc. 47-3, p. 1; Doc. 51, p. 1). Rather, Preston states he and his cellmate

6. Offender Lenor remained in cell number 3. (Doc. 47-3, p. 1; Doc. 51, p. 2).

7. Sergeant Jacqueray Ford ("Sergeant Ford") opened the door to cell number 3 to allow Campbell to reenter the cell. Id.

8. The cell door was open for approximately six to seven seconds to allow Campbell to safely reenter the cell. (Doc. 47-3, p. 2; Doc. 51, pp. 1-8).

9. When Sergeant Ford opened the door to cell number 3, Preston violated RLCC procedures and ran inside cell number 3. (Doc. 47-3, p. 2; Doc. 51, p. 2).

10. Hicks was seated at the captain's desk in the key of the Crawdad cell block at the time of the incident. (Doc. 47-3, p. 2; Doc. 51, p. 1).

11. Hicks used physical force to remove Preston from cell 3. (Doc. 47-3, p. 2; Doc. 51, p. 2).

The parties dispute the remaining facts surrounding Preston's extraction from cell number 3 and the events occurring thereafter. (Doc. 47-3, pp. 1-5; Doc. 51, pp. 1-8).

Hicks argues that the Court's analysis must consider only the facts known to Hicks. (Doc. 47-4, p. 6). Hicks attaches in support: (1) the affidavit of Craig Laborde, with attachments; and (2) the affidavit of Hicks, with an attachment. (Docs. 47-1, 47-2, 47-3). Hicks contends he knew the following facts: (1) Preston violated RLCC policies to enter the cell of Lenor and Campbell; (2) Preston approached Lenor with a raised fist as if to strike Lenor; (3) Preston failed to respond to officer presence and verbal commands to exit cell 3; (4) Preston could injure Lenor in a number of ways; (5) After Preston was removed from the cell, it would take six to seven seconds for the

---

were let out for showers, and that Campbell was let out to use the phone. (Doc. 51, p. 1; Doc. 51-2, p. 1).

9

cell door to close; (6) Use of Force Policy of the Louisiana Department of Public Safety and Corrections, Corrections Services ("Use of Force Policy") set forth guidelines allowing the use of a straight-arm bar takedown to restore discipline to the D1-tier of the Crawdad cell block; and (7) the application of pressure to Preston's triceps muscle, rather than to his elbow, would reduce the risk of injury. (Doc. 47-4, pp. 6-7).

Hicks shows he is familiar with the Use of Force Policy (Doc. 47-2, pp.9-24) setting forth guidelines for reasonable use of force. (Doc. 47-2, p. 2). The Use of Force Policy contains categories of use of force, categories of an offender's actions, and definitions of "necessary force" and "reasonable force." (Doc. 47-2, pp. 10-24). Hicks served on the D-team as Captain in the Crawdad cell block. (Doc. 47-2, p. 3). Hicks attests that an offender is only allowed to enter the cell to which he is assigned. Id.

Hicks shows he was at the captain's desk when Sergeant Ford stated there was a problem with an offender on the D1-tier. (Doc. 47-2, p. 4). Hicks states that when he responded to the D1-tier, Preston was at the telephone, Offender Campbell had just finished his shower; and Offender Lenor was on the top bunk of cell number 3. Id. Preston disputes Hicks's location, declaring that Hicks was nowhere around. (Doc. 51-2, p. 2). Preston argues, however, that Hicks attests in his own affidavit that he was at the captain's desk when he heard there was a problem. (Doc. 51-2, p. 2).

Hicks states, and it is undisputed that, Sergeant Ford opened cell number 3's door to allow Offender Campbell to re-enter the cell and Offender Preston ran in to cell number 3 before the door closed. (Doc. 47-2, p. 4; Doc. 51-2, p. 2). Hicks attests that Sergeant Ford and Hicks gave verbal commands for Preston to exit cell number

10

3. (Doc. 47-2, p. 5). Hicks states Sergeant Ford and Hicks also used officer presence and use of verbal commands to bring Preston into compliance. Id. Hicks attests that Preston approached Offender Lenor with his fist raised, as if to strike Offender Lenor. Id. Hicks could not see what, if anything, was in Preston's hand. Id.

Hicks attests he was concerned Preston intended to injure Offender Lenor in any number of ways. Id. Hicks also was also concerned Preston may have had a weapon. Id. He was not aware of whether anything was in Preston's hand. Id. Hicks attests Sergeant Ford and Hicks entered cell number 3 because Preston refused to comply with verbal commands to exit the cell. (Doc. 47-2, p. 6). Hicks states Preston continued to resist verbal commands and Hicks grabbed Preston and escorted him out of cell number 3. Id. Hicks attests Preston continued to resist after Hicks pulled him out of cell number 3 and Hicks applied a straight arm bar takedown to Preston's right arm to place him on the floor. Id.

Hicks attests he grabbed Preston's right wrist with his right hand and used his left hand to apply downward pressure to Preston's right triceps while pulling upon Preston's wrist. (Doc. 47-2, p. 6). Hicks attests pressure is applied to the muscle, not the joint, in order to reduce the risk of fracture. Id. Hicks applied downward pressure above Preston's right triceps to force him to the ground. Id. Hicks attests Preston's continued refusal to comply with officer presence and verbal commands required his use of a straight arm bar takedown to restore and maintain discipline to the D1-tier. Id.

11

Once Preston was on the ground, Sergeant Ford assisted Hicks in handcuffing Preston. (Doc. 47-2, p. 7. Hicks claims only reasonable and necessary force was used to gain control of Preston, who refused verbal commands and resisted efforts to handcuff him after being removed from cell number 3. Id. Hicks denies that he intended to hurt or inflict pain on Preston. Id.

Through competing declarations, Preston disputes Hicks's account of the events. (Docs. 51-2, pp. 1-9). Preston states he was approximately 8 feet from the tier gate from where Sergeant Ford was standing at the D1 tier control box. (Doc. 51-2, p. 2). Preston admits he ran inside of cell number 3 when it was opened to allow Campbell inside of his cell. Id. Preston states Lenor was on the top bunk. Id. Preston states he did not attempt to pull, swing, or attack Offendor Lenor while he was inside cell number 3. Id. Preston states Hicks was not around when he ran inside cell number 3, and at no time observed him with closed fists as asserted in Hicks's affidavit. Id.

Preston declares Hicks was the first officer to enter the cell, followed by Sergeant Ford and several other officers. (Doc. 51-2, p. 3). Preston was facing the cell gate attempting to exit when Hicks knocked him to the back of the cell. Id. Preston states Hicks elbowed him several times to the face while inside cell number 3. Id. Preston declares that he did not resist Hicks in being removed from cell number 3. Id. Preston states he was pulled from the cell and immediately slammed to the ground on the D1 tier. Id. He was laying on his stomach with both arms behind his back. Id.

Preston disputes Hicks's assertion that Preston failed to comply with officer presence and verbal commands. (Doc. 51, p. 2). Preston declares he did not pull away or resist Hicks or any of the officers while he was on the ground. (Doc. 51-2, p. 3). Preston states Hicks had his right arm behind him, pulling and twisting his arm, while bent down applying pressure to the right side of his body with his knee. Id. Preston asserts Sergeant D. Augustine had his left arm spread out on the left side in handcuffs. Id. Preston feared his arm would break and said "your[sic] gonna[sic] break my arm." Id. Preston declares Hicks continued to pull and twist his arm until his bone started protruding to the right top part of his shoulder. Id.

Preston submits photos of his shoulder in support. (Doc. 51-2, pp. 10-12). Preston also attached an X-ray of his right shoulder from February 12, 2016 showing the lateral end of the right clavicle was displaced superiorly by 16 millimeters, with no fracture visualized. Doc. 51-2, p. 13). The impression states the findings are "characteristic of injury to the right acromioclavicular and/or coracoclavicular ligaments." Id.

Preston also submits the declarations of Offender Campbell, Offender Jacobs, and Offender Celestine. (Docs. 51-2, pp. 5-9). Offender Jacobs and Offender Celestine support Preston's assertion that he did not resist the officers after being removed from the cell. (Doc. 51-2, pp. 6-8).

Offender Campbell states he remembers Preston was standing close to Campbell's cell when Sergeant Ford opened the door to allow him in his cell. (Doc. 51-2, p. 5). Offender Campbell states that he had been let out to use the telephone.

13

Id. Offender Campbell states Sergeant Ford returned to the D1 control booth to allow Campbell to go inside his cell. Id.

Offender Jacobs states he was confined in cell number 4 and observed Preston run inside cell number 3. (Doc. 51-2, p. 6). He observed Hicks and Sergeant Ford, along with several other officers enter the D1 tier. Id. Offender Jacobs states Preston was already inside cell number 3. Id. He observed Preston being pulled from the cell and slammed on the ground in the hallway of the tier. Id. He also observed Hicks pulling and twisting Preston's arm as he screamed out, "You're gonna break my arm." Id. Offender Jacobs states Preston did not refuse to be handcuffed, and did not resist. Id.

Offender Celestine states he was let out of cell number 9 for a shower. (Doc. 51-2, p. 8). He was Preston's cellmate. Id. He was still in the shower when he observed several officers enter the tier. Id. He observed Preston being thrown to the ground. Id. Offender Celestine states Hicks had Preston's right arm behind him pulling it in a rear position while twisting it as Preston lay on the ground. Id. Another officer had Preston's left arm already behind his back. Id. He states Hicks kept pulling and twisting Preston's arm without him even resisting. Id.

Preston argues the amount of force used by Hicks was unreasonable, unnecessary, and extremely excessive. (Doc. 51, p. 6). Preston contends he was already inside of cell 3, and that he had a reasonable amount of time to attack Lenor but did not. Id. Preston claims the only perceived threat at the time was that he ran inside another offender's cell. Id.

Under the first <u>Hudson</u> factor – the extent of the injury suffered by an inmate – Preston's medical records show the "lateral end of the right clavicle [was] displaced . . . characteristic of injury to the right acromioclavicular and/or coracoclavicular ligaments." (Doc. 51-2, p. 13).  Thus, the first <u>Hudson</u> factor weighs in Preston's favor.  The second <u>Hudson</u> factor – the need for application of force – partially weighs in Hicks's favor, as it is undisputed that Preston violated policy by running in to cell number 3. (Doc. 47-3, p. 2; Doc. 51, p. 2).  However, as to the remaining <u>Hudson</u> factors, due to conflicting declarations and viewing the evidence in light most favorable to Preston, genuine issues of material fact remain as to whether Preston complied with verbal commands and officer presence or continued resisting; whether, once on the ground, Preston was subdued or continued resisting; and whether any gratuitous force was applied after Preston stopped resisting.

The Fifth Circuit has held that prison officials may violate an inmate's Eighth Amendment rights when they "use gratuitous force against a prisoner who has already been subdued."  <u>Cowart</u>, 837 F.3d at 454.  Moreover, Hicks is entitled to qualified immunity only if, viewing the summary judgment facts in light most favorable to Preston, Hicks's use of force was not "clearly excessive to the need" or the excessiveness was not "objectively unreasonable."  <u>Rockwell v. Brown</u>, 664 F.3d 156, 991 (5th Cir. 2011).

The central issue remaining in this case is whether Hicks's use of force was a good faith effort to maintain discipline, or a malicious use of force to cause harm.  The Court cannot decide that issue without resolving factual disputes as to whether

Preston continued to resist and whether Hicks continued to apply gratuitous force after Preston stopped resisting. And the only possible way to resolve those disputes would be to credit either the officer's affidavits or the inmate's declarations. On summary judgment, and absent other decisive evidence, the Court cannot do that. Credibility determinations are inappropriate for summary judgment. Tarver v. City of Edna, 410 F.3d 745, 753 (5th Cir. 2005) (citing Bazan v. Hidalgo County, 246 F.3d 481, 492 (5th Cir. 2001)). Thus, summary judgment is unwarranted.

## III. Conclusion

Because genuine issues of material fact remain as to whether Hicks is entitled to qualified immunity and whether Hicks's use of force was excessive;

IT IS RECOMMENDED that Hicks's Motion for Summary Judgment (Doc. 47) be DENIED.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed.R.Civ.P. 72(b), parties aggrieved by this Report and Recommendation have fourteen (14) calendar days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. No other briefs (such as supplemental objections, reply briefs, etc.) may be filed. Providing a courtesy copy of the objection to the undersigned is neither required nor encouraged. Timely objections will be considered by the District Judge before a final ruling.

Failure to file written objections to the proposed findings, conclusions, and recommendations contained in this Report and Recommendation within fourteen (14)

days from the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Judge, except upon grounds of plain error.

    THUS DONE AND SIGNED in Alexandria, Louisiana, on this 26th day of September 2019.

                                                 _____
                                                 JOSEPH H.L. PEREZ-MONTES
                                                 UNITED STATES MAGISTRATE JUDGE